**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**SAFMARINE,**

        **Plaintiff,**

  -against-

**COLUMBIA CONTAINER LINES (USA), INC.,**

      **Defendant/Third-Party Plaintiff,**

  -against-

**STOVE PAVILION, INC.,**

      **Third/Party Defendant.**
-------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**

**10-CV-1825 (KAM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

On April 23, 2010, plaintiff Safmarine, Inc. ("Safmarine"), commenced this action against Columbia Container Lines (USA) Inc. ("Columbia"). Safmarine brought the action pursuant to the Shipping Act of 1984 (the "Shipping Act"), 46 U.S.C. § 40101 *et seq.*,[1] to recover payment in the amount of $56,700 allegedly owed to Safmarine by Columbia for demurrage[2] on shipping containers. See Complaint (Apr. 23, 2010) ("Compl."), ECF Docket Entry ("D.E.") #1. Columbia was properly served and answered on July 23, 2010, asserting as an affirmative defense that any injury Safmarine sustained was caused by the conduct of a third party. See Answer (July 23, 2010) ¶ 11, D.E. #7.

Columbia then filed a third-party complaint against Stone Pavilion, Inc. ("Stone

---

[1] Formerly codified at 46 App. U.S.C. § 1701 *et seq*.

[2] Demurrage is the term for storage fees for cargo that has been in a port past the end of "freetime" (the period in which cargo may be stored without incurring additional fees).

Pavilion") on August 9, 2010, asserting its own claims for damages and, on Safmarine's behalf, alleging Stone Pavilion's direct liability to Safmarine.[3] See Defendant's Third Party Complaint in Admiralty and at Law (Aug. 9, 2010) ("Third-Party Compl."), D.E. #13. Although properly served, Stone Pavilion failed to respond to the Third-Party Complaint or otherwise appear in this action. On October 29, 2010, the Clerk of the Court noted Stone Pavilion's default. See Clerk's Entry of Default (Oct. 29, 2010), D.E. #26. The Honorable Kiyo A. Matsumoto referred Columbia's motion for a default judgment to the undersigned magistrate judge for a report and recommendation concerning the scope of relief, including damages. See Order Referring Motion (Nov. 2, 2010). On November 3, 2010, this Court ordered Columbia to serve and file its inquest submission by November 12, 2010, and Stone Pavilion to serve and file opposition papers to Columbia's motion by November 29, 2010. See Order (Nov. 3, 2010), D.E. #30.[4]

Safmarine agreed to settle its dispute with Columbia in the amount of $12,500, preserving its right to receive any sums in excess of $12,500 that Columbia might recover from Stone Pavilion. See Stipulation and Order of Settlement (Oct. 29, 2010) ("Stipulation"), D.E. #27. On November 1, 2010, this Court thus dismissed Safmarine's claims against

---

[3] Columbia is entitled to bring suit on Safmarine's behalf under Rule 14(c) of the Federal Rules of Civil Procedure. A defendant in an admiralty or maritime claim "may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable -- either to the plaintiff or to the third-party plaintiff" -- for remedy over or contribution related to the same transaction or occurrence. Fed. R. Civ. P. 14(c)(1). The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant. See Fed. R. Civ. P. 14(c)(2).

[4] Federal Express returned the copy of the Court's order addressed to Stone Pavilion, with the notation that the addressee had moved from its last known address without leaving a forwarding address. See Docket Entry (Nov. 10, 2010).

Columbia. See Order of Settlement (Nov. 1, 2010), D.E. #29.[5]

For the reasons that follow, this Court recommends that a default judgment be entered against Stone Pavilion and that Columbia be awarded the full monetary relief sought, with all sums in excess of $12,500 to be remitted to Safmarine.

**FACTUAL BACKGROUND**[6]

On or around August 10, 2008, Stone Pavilion engaged Columbia as a destination agent for an ocean shipment of nine shipping containers (the "Goods") to be transported from Dubai to Houston, Texas. See Third-Party Compl. ¶ 10. On October 26, 2008, Columbia, as destination agent and carrier, issued Stone Pavilion, as consignee, a Bill of Lading for the Goods, along with specified Terms and Conditions. See Bill of Lading ("Bill of Lading"), attached as Third-Party Compl. Ex. A, at 2; Bill of Lading Terms and Conditions ("Terms"), attached as Third-Party Compl. Ex. B. The Terms provide that the "Merchant," defined in part as the party named as "consignee" on the Bill of Lading (i.e., Stone Pavilion), is liable for and shall indemnify the "Carrier," defined in part as the party named as "Carrier" on the Bill

---

[5] Prior to the filing of the Third-Party Complaint against Stone Pavilion, Safmarine and Columbia had consented to have the case handled for all purposes by a magistrate judge, pursuant to 28 U.S.C. § 636(c). See Consent to Jurisdiction by U.S. Magistrate Judge (July 29, 2010), D.E. #9. As Stone Pavilion did not appear, its consent was never secured; therefore, the case remains with Judge Matsumoto for purposes of entering judgment against Stone Pavilion.

[6] In conducting an inquest following a defendant's default, the Court must accept as true all of the factual allegations in the pleading except those relating to damages. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (collecting cases); see also City of New York v. Adventure Outdoors, Inc., 644 F.Supp.2d 201, 114 (E.D.N.Y. 2009) (citations omitted).

3

of Lading,[7] for demurrage costs. See Terms ¶¶ 2, 22.

In connection with and in reliance upon its agreement with Stone Pavilion, Columbia engaged Safmarine as carrier to ship the Goods to Houston. See Third-Party Compl. ¶ 12.[8] Safmarine received the Goods in Dubai on October 22, 2008, and transported the Goods to Houston by ship. See Compl. ¶¶ 4-5; Bill of Lading at 2. Safmarine delivered the Goods to Houston on December 1, 2008; freetime expired on December 8, 2008; and demurrage began to accumulate from that point until Stone Pavilion claimed the Goods and removed them from port on January 5, 2009. See Compl. ¶ 5; Third-Party Compl. ¶ 15.

On January 5, 2009, in order to induce Safmarine to release the Goods to Stone Pavilion, Stone Pavilion transmitted to Safmarine's North Carolina Office, by facsimile, copies of six checks in the total amount of $56,700. See Third-Party Compl. ¶ 16; id. Ex. D. In reliance on Stone Pavilion's express or implied promise to send the original checks to Safmarine, Safmarine released the Goods to Stone Pavilion. See Third-Party Compl. ¶ 18. Despite Safmarine's release of the goods and subsequent demand for the original checks, Stone Pavilion never paid Safmarine for the demurrage costs. See id. ¶¶ 20-21.

On January 16, 2009, Safmarine sent Columbia an invoice for $56,700, due September 2, 2009, claiming that Columbia was liable for the demurrage costs pursuant to the terms and

---

[7] Columbia, as "Destination Agent," signed the Bill of Lading "FOR THE CARRIER." See Bill of Lading.

[8] Columbia acted as Stone Pavilion's agent in booking Safmarine as Carrier for the Goods, and thus became the Consignee with respect to Safmarine, and the Carrier with respect to Stone Pavilion. See Third-Party Compl. ¶ 34; Non-Negotiable Waybill (Jan. 3, 2009) ("Waybill"), attached as Compl. Ex. A.

4

conditions in Safmarine's Waybill. See id. ¶ 15; Waybill;[9] Demurrage Invoice (Jan. 16, 2009) ("Invoice"), attached as Third-Party Compl. Ex. C, at 6. The Invoice lists demurrage charges in the amount of $225 per day, for each of the nine shipping containers, for twenty-eight days past freetime, for a total of $56,700 in demurrage owed. See Invoice. On April 23, 2010, Safmarine filed its complaint against Columbia, seeking $56,700 in demurrage. See Compl.

Columbia in turn filed its Third-Party Complaint against Stone Pavilion on August 8, 2010, seeking indemnification by Stone Pavilion for any costs Columbia might be ordered to pay Safmarine; alleging Safmarine's damages in the amount of $56,7000; and setting forth a contract claim for a judgment against Stone Pavilion in the amount of $56,700, and declaratory relief establishing the liabilities of each party. See Third-Party Compl. ¶¶ 24, 30, 32-35. The summons and Third-Party Complaint were served on Stone Pavilion, by service on the Secretary of State of Texas, on August 13, 2010. See Affidavit of Service for Third Party Summons & Complaint (Aug. 20, 2010), D.E. #16. On October 27, 2010, Columbia moved for default judgment based on Stone Pavilion's continuing failure to appear in the action. See Motion for Default Judgment (Oct. 27, 2010), D.E. # 24. Two days later, the Clerk of the Court noted Stone Pavilion's default. See Clerk's Entry of Default (Oct. 29, 2010), D.E. #26. Thereafter, Judge Matsumoto referred the instant motion to the undersigned magistrate judge

---

[9] The Waybill between Safmarine and Columbia incorporates by reference the terms appearing on the reverse side of the document (which has not been supplied to the Court) and on Safmarine's website, www.safmarine.com. These include (under headings denominated as "1. Definitions," "16.6, Freight, Expenses and Fees," and "22.4, Notification, Discharge and Delivery") terms allocating responsibility for collecting the Goods and paying storage costs to the Merchant (which is defined as the Shipper/Consignee).

for a report and recommendation concerning the amount of damages owed. See Order Referring Motion (Nov. 2, 2010).

## **DISCUSSION**

### I. Liability

As third-party defendant Stone Pavilion failed to appear in the action, despite having been properly served, this Court may assume personal jurisdiction over it. See Transaero, Inc. v. La Fuerza Aerea Boliviana, 162 F.3d 724, 730 (2d Cir. 1988) ("A court entering a default judgment may assume that it has jurisdiction over the defendant when the defendant does not appear in court to contest the judgment, . . . ."); accord Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 161 (2d Cir. 2005); Saunders v. Morton, 5:09-cv-125, 2010 WL 3290455, at *5 (D. Vt. Aug. 18, 2010). Further, entry of a default judgment is appropriate provided the pleading properly states a claim upon which relief may be granted. See, e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp., No. 08-CV-116 (FB)(JMA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30, 2009). The pleadings in this case clearly state causes of action under federal maritime law.

Both the Complaint and the Third-Party Complaint seek monetary relief for demurrage under the Shipping Act, 46 U.S.C. § 40101 *et seq*. An action for demurrage charges in connection with a maritime transaction states a cause of action falling within federal admiralty jurisdiction, 28 U.S.C. § 1333. See Kerr S.S. Co. v. Petroco, Inc., No. 90 Civ. 1980 (RLC), 1991 WL 64199, at *2 (S.D.N.Y. Apr. 18, 1991) ("Kerr") (collecting cases); TAG/ICIB Servs., Inc. v. Sedeco Servicio de Descuento en Compras, 570 F.3d 60, 63 (1st Cir. 2009);

Gulf Puerto Rico Lines v. Associated Food, 366 F.Supp. 631, 635 (D.P.R. 1973) ("Puerto Rico") ("[I]t would be hard to think of any situation more closely related to water transportation, except for the actual carriage itself, than the incident of demurrage.").

The general rule is that shippers or consignees are liable for demurrage. While it is alleged that Stone Pavilion's liability arises in part from the terms in the Bill of Lading and Waybill, demurrage and freetime are also implied terms of maritime contracts. Carriers grant freetime "as an incident, an implied term, of a ship's contract to transport and deliver goods." Puerto Rico, 366 F.Supp. at 635 (analyzing United States Federal Maritime Commission decision, Free Time and Demurrage Charges at New York, 3 USMC 89, 101 (1948) ("New York")). The corresponding obligation, "to remove the goods within a reasonable time and not to appropriate the space needed by the ship company for other cargo," is also an implied term in the maritime contract and falls on the shipper or consignee. Id. (citing New York, 3 USMC at 101) (additional internal citations omitted). Demurrage charges "are regarded as an extension of the ocean freight charges for which the shipper is liable." Kerr, 1991 WL 64199, at *2; Ocean Transp. Line v. Am. Philippine Fiber Indus., 743 F.2d 85, 92 (2d Cir. 1984) ("[O]ne who undertakes to guaranty the costs of ocean freight is secondarily liable for any demurrage incurred."); Pennsylvania R.R. v. Moore-McCormack Lines, 370 F.2d 430, 432 (2d Cir. 1966) ("Moore-McCormack") ("[T]he general rule is that demurrage is extended freight and . . . the consignee is liable to pay demurrage . . . ."). Any risk that prevents the discharge of cargo during the stipulated freetime "should be borne by the cargo interest, shipper or consignee, as the case may be." Puerto Rico, 366 F.Supp. at 635 (citing Yone

Suzuki v. Cent. Argentine Ry., 27 F.2d 795, 804 (2d Cir. 1928); The Marpesia, 292 F. 957, 969 (2d Cir. 1923)). Shippers are absolutely liable for demurrage "except (1) where a specific provision of a charter party exonerates the consignee from liability for demurrage; (2) where the delay is the fault of the carrier or those for whom he is responsible; or (3) where the delay is caused by a vis major." Moore-McCormack, 370 F.2d at 432; see also Puerto Rico, 366 F.Supp. at 635-36 (collecting cases).

Accordingly, the Third-Party Complaint properly states a claim for demurrage under federal maritime law, in that it alleges that Stone Pavilion is the Shipper/Consignee for the Goods in question; that Stone Pavilion did not remove the cargo until freetime expired, thereby incurring demurrage; that Stone Pavilion as Shipper/Consignee is obligated both by the Bill of Lading and maritime law to pay any demurrage charges to the Carrier; and that Stone Pavilion has not paid the demurrage owed.

## II. Damages

Third-party defendant Stone Pavilion is liable to Columbia on behalf of Safmarine for the entire unpaid demurrage in the amount of $56,700. The Invoice clearly shows the demurrage charges in the amount of $56,700, calculated at a rate of $225 per day for each of the nine containers, over the course of twenty-eight days that the cargo remained at the port after freetime. See Invoice.

As the claim is a contract claim properly brought under federal maritime law, the judgment need not be limited to or reduced by the $12,500 settlement between Safmarine and Columbia. Cf. N.Y. Gen. Oblig. Law § 15-108 (limiting a settling tortfeasor's ability to

recover contribution). However, as the settlement preserved Safmarine's right to receive any sums in excess of $12,500 that Columbia recovers from Stone Pavilion, see Stipulation, third-party plaintiff Columbia should be obligated to remit to Safmarine any sums in excess of that amount that Columbia recovers in executing upon the $56,700 judgment against Stone Pavilion.

## CONCLUSION

For the reasons stated above, this Court respectfully recommends that judgment be entered against third-party defendant Stone Pavilion as follows: Columbia shall have judgment in the amount of $56,700, for unpaid demurrage, and shall remit to Safmarine any amounts collected in excess of $12,500, the settlement amount paid by Columbia to Safmarine.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Kiyo A. Matsumoto on or before January 4, 2011. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to transmit copies of this Report and Recommendation to Safmarine and Columbia via ECF and to Stone Pavilion via Federal Express at its last known address:

>  Stone Pavilion
>  4517 Southerland
>  Houston, TX 77092

**SO ORDERED.**

**Dated:    Brooklyn, New York
            December 15, 2010**

>                                    **ROANNE L. MANN
>                                    UNITED STATES MAGISTRATE JUDGE**